BLANK ROME LLP
William R. Bennett III
Noe S. Hamra
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
William.Bennett@blankrome.com
Noe.Hamra@blankrome.com

*Attorneys for Petitioner Prime Trading SA*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PRIME TRADING SA, <br><br> Petitioner, <br><br> - against - <br><br> AYHAN SEZER YAG VE GIDA END TIC LTD STI, <br><br> Respondent. | Civ. No. 25-cv-1010 |

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITION
TO RECOGNIZE, CONFIRM AND ENFORCE ARBITRATION AWARD
AND FOR ENTRY OF JUDGMENT**

Petitioner Prime Trading SA ("Prime" or "Petitioner") respectfully submits this memorandum of law in support of its Petition pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") and Chapter Two of the Federal Arbitration Act, 9 U.S.C. §§ 201 et seq. (the "FAA") for an order recognizing, confirming and enforcing the arbitration Tribunal's and Board of Appeal's awards entered in its favor on July 19, 2023, April 29, 2024 and July 26, 2024 (collectively referred to as the "Awards"), against Respondent Ayhan Sezer Yag Ve Gida End Tic Ltd Sti. ("Ayhan" or "Respondent"), and for the entry of judgment thereon.

**INTRODUCTION**

In October 2022, Petitioner commenced arbitration proceedings in London against Respondent claiming damages as a result of a breach of contract entered into on or about August 24, 2022 ("Contract"), between Prime Trading SA and Ayhan Sezer Yag Ve Gida End Tic Ltd Sti. After full participation by both Petitioner and Respondent, on July 19, 2023, the Tribunal issued an Award (4795) finding Respondent liable for Petitioner's damages in the principal amount of $720,000. Additionally, the Tribunal ordered Respondent to pay the fees, costs and expenses relating to the arbitration proceedings as well as Petitioner's legal fees. See pages 19-20 of Exhibit A to Bennett Declaration.

Unhappy with the Tribunal's Award, in or about September 2023, Respondent filed an appeal. The Board of Appeal issued its First Appeal Award (1206) on April 29, 2024, upholding the Tribunal's Award (4795) and further directing Respondent to pay for the cost of the appeal, as well as Petitioner's legal fees and the fees of its Trade Representatives. See page 45 of Exhibit B to Bennett Declaration. On May 28, 2024, Petitioner applied to the Board of Appeal for an assessment of its legal and Trade Representative costs associated with the Tribunal's and Appeal's Awards as Respondent had refused to settle them on the grounds of the costs being viewed as excessive. As a result, the Board of Appeal issued its Second Appeal Award on July 26, 2024. See pages 12-13 of Exhibit C to Bennett Declaration.

As fully set forth below, the Awards are final and enforceable pursuant to the New York Convention and Chapter Two of the FAA. The grounds for a court to refuse to confirm a final and enforceable arbitration award under the FAA and New York Convention are extremely narrow and the burden of proof on the party objecting to the confirmation of the award is extremely high.

None of the narrow grounds to refuse confirmation of the Award exist here, and the Court should recognize, confirm and enforce the Awards.

## FACTUAL BACKGROUND

Petitioner hereby incorporates the factual background as it fully appears in its Petition to Recognize, Confirm and Enforce the Arbitration Award and for Entry of Judgment.

## ARGUMENT

### I. The Court Should Confirm and Enforce the Final Awards

The Final Awards were issued in an international-commercial arbitration governed by the New York Convention and Chapter Two of the FAA. Section 207 of the FAA provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207 (emphasis added); New York Convention, Art. III ("[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon") (emphasis added); *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15 (1974) ("The goal of the convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.").

The Final Awards clearly fall under the terms of the New York Convention. In implementing the Convention, Congress defined agreements or awards falling under the

3

Convention as those "arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title [i.e., maritime transactions or transactions involving commerce]." 9 U.S.C. § 202. The Final Awards and underlying agreement at issue herein satisfies the definition of awards falling under the Convention.

Moreover, Article I(1) of the New York Convention provides that the Convention applies "to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." The Final Awards also are subject to enforcement under the New York Convention because they involve non-domestic awards; i.e., an award between parties domiciled or having their principal place of business outside of the U.S. As the Second Circuit has stated,

> We adopt the view that awards "not considered as domestic" denotes awards which are subject to the Convention not because [they were] made abroad, but because [they were] made within the legal framework of another country, e.g., pronounced in accordance with foreign law or **involving parties domiciled or having their principal place of business outside the enforcing jurisdiction**. We prefer this broad[ ] construction because it is more in line with the intended purpose of the treaty, which was entered into to encourage the recognition and enforcement of international arbitration awards. Applying that purpose to this case involving two foreign entities leads to the conclusion that this award is not domestic.

*Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983) (internal citation omitted)) (emphasis added); *see also Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1441 (11th Cir. 1998) (wherein the Eleventh Circuit "join[ed] the First, Second, Seventh, and Ninth Circuits" in this interpretation).

Here, both Prime and Ayhan are entities from countries that are parties to the New York Convention (i.e., Switzerland and Turkey). Enforcement of the arbitral award is therefore

4

required. *See Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Achille Lauro*, 712 F.2d 50, 52 (3d Cir. 1983) (when all parties to time charter agreement and lawsuit were Italian, and Italy and United States were both parties to the New York Convention, arbitration clause fell within Convention's coverage). *See also Ledee v. Ceramiche Ragno,* 684 F.2d 184, 186–87 (1st Cir. 1982) (stating that Chapter 2 mandates enforcement of a written commercial arbitral agreement when one of the parties to the agreement is not an American citizen).

## II. Standard of Review for Confirmation of International Arbitration Awards Under the New York Convention

The New York Convention provides that covered awards must be enforced, except on very specific and limited grounds: "Section 207 provides that confirmation is mandatory 'unless … [a court] finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the … Convention." *Am. Life Ins. Co. v. Parra*, 269 F. Supp. 2d 519, 524 (D. Del. 2003);[1] accord *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 336 (5th Cir. 1976).

"[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). Such proceedings are "not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007). At the confirmation stage, the court is not required to consider the subsequent question of compliance.

---

[1] While the *Parra* court was construing the Panama Convention in its decision, it cited to Section 207 of the New York Convention as the mechanism by which Panama Convention awards are recognized in the United States. See *Parra*, 269 F. Supp. 2d at 524.

*See*, *e.g.*, *Am. Nursing Home v. Local 144*, 1992 WL 47553, at *2 (S.D.N.Y. Mar. 4, 1992) ("The issues of compliance and confirmation are distinct from each other. A court may confirm an arbitration award even in the absence of a showing of non-compliance.").

"[T]he showing required to avoid summary confirmation is high," *Ottley v. Schwarzberg*, 819 F.2d 373, 376 (2d Cir. 1987), and the burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation. *Imperial Ethiopian*, 535 F.2d at 336; *see also* New York Convention, Art. V ("Recognition and enforcement of the award may be refused, at the F.2d 969, 973 (2d Cir. 1974) (party seeking to vacate an arbitration award bears the burden of proof to set forth specific grounds for doing so); *TMR Energy Ltd. v. State Prop. Fund*, 411 F.3d 296 (D.C. Cir. 2005) (the New York Convention "assigns the burden of persuasion to the party opposing enforcement") (citing *Indus. Risk*, 141 F.3d at 1441-42).

Moreover, "[d]efenses to enforcement under the New York Convention are construed narrowly, 'to encourage the recognition and enforcement of commercial arbitration agreements in international contracts,'" *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004) (quoting *Imperial Ethiopian*, 535 F.2d at 335), and "this Court's review of the award thus is extremely limited." *Rintin Corp. v. Domar, Ltd.*, 374 F. Supp. 2d 1165, 1169 (S.D. Fla. 2005) (citation omitted), *aff'd*, 476 F.3d 1254 (11th Cir. 2007). "This is particularly true in the context of international arbitrations, in which context there is a 'general pro-enforcement bias.'" *Id.* (citation omitted). Indeed, "[a]bsent 'a convincing showing' that one of these narrow exceptions [under Article V of the New York Convention] applies the

6

arbitral award will be confirmed." *In re Arbitration Between Trans Chem. Ltd. and China Nat'l Mach. Import & Exp. Corp.*, 978 F. Supp. 266, 309 (S.D. Tex. 1997) (citations omitted).

### III. None of the Specified Grounds Exist for Refusal or Deferral of Confirmation Under the New York Convention

Under the New York Convention, there are only two substantive grounds on which a court may refuse to enforce an award: (1) if "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of the country;" or (2) if the "recognition or enforcement of the award would be contrary to the public policy of that country." New York Convention, Art. V(2). Neither exception applies here.

There is no question that the parties' dispute – concerning breach of a commercial agreement – is "capable of settlement by arbitration" under U.S. law. U.S. law strongly encourages arbitration of commercial disputes and the recognition of resulting awards. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 615 (1985) (noting strong "federal policy in favor of arbitral dispute resolution, a policy that applies with special force in the field of international commerce"); *Olsher Metals Corp. v. Olsher*, No. 03-12184, 2004 WL 5394012, * 2 (11th Cir. Jan. 26, 2004) ("[t]he Federal Arbitration Act evinces a 'liberal federal policy favoring arbitration agreements[ ],' and this presumption in favor o[f] arbitration 'applies with special force in the field of international commerce'") (internal citations omitted).

Similarly, there is no question that the public policy exception does not apply. For the "public policy" exception to apply under the New York Convention, Ayhan must make a convincing showing that a defect in the Final Award was so severe and pervasive that it "would violate [the forum state's] most basic notions of morality and justice." *Waterside Ocean Navigation Co. v. International Navigation Ltd.*, 737 F.2d 150, 152 (2d Cir.1984). "The general

7

pro-enforcement bias informing the convention … points to a narrow reading of the public policy defense." *Karaha Bodas Co.,* 364 F.3d at 306 (citations omitted).

The New York Convention also allows a court to refuse enforcement if the party against which enforcement is sought raises one of the following procedural objections: incapacity of the contracting parties or invalidity of the arbitration agreement; failure of notice; inapplicability of the arbitration agreement to the particular dispute being arbitrated; irregularity in the formation of the arbitral tribunal; or that the award is not yet binding or has been set aside or superseded by a competent authority. New York Convention, Art. V(1).

None of those procedural grounds applies here[2] and, in any event, the burden is upon the party resisting enforcement to prove the existence of such grounds:

> The proponent of the award is required only to supply the original or a certified copy of the award and the arbitral agreement. These establish a *prima facie* case, and the burden shifts to the defendant to establish the invalidity of the award on one of the grounds specified in Article V 1.

*Czarina L.L.C. v. WF Poe Syndicate*, 358 F.3d 1286, 1292 n.3 (11th Cir. 2004) (citation omitted); see also *Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 613 F. Supp. 2d 1362, 1367, 1370 (S.D. Fla. 2009) (party resisting enforcement failed to meet burden under Article V(1); "[t]here is a 'general pro-enforcement bias manifested in the [New York] Convention").

Moreover, federal courts routinely reject frivolous arguments opposing confirmation of arbitration awards. *See B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913-14 (11th Cir. 2006) (upholding confirmation of arbitration award and considering sanctions for frivolous

---

[2] In this regard, there are no facts to indicate that Ayhan's representatives lacked capacity to enter into the Contract at issue; Ayhan does not contend that the arbitration provision in the Agreement is invalid; the arbitration clause unequivocally applies to "[a]ny dispute arising out of this Contract". The fundamental claim in this case involves Ayhan's breach of contract. The arbitration clause clearly applies. Ayhan had adequate notice of the arbitration and fully participated in the proceedings; the Arbitration Tribunal was constituted by the procedure outlined in the arbitration provisions; and the Final Awards are final by their own terms and have not been superseded by any competent authority.

arguments opposing confirmation); *see also DMA Int'l, Inc., v. Qwest Comms. Int'l Inc.*, 585 F.3d 1341, 1346 (10th Cir. 2009) (ordering lawyers for losing party to pay the prevailing party's attorneys' fees as sanctions for appealing the confirmation of an arbitral award without sufficient grounds).

Prime therefore is entitled to immediate confirmation and enforcement of the Final Awards under the New York Convention and respectfully requests that the Court enter judgment accordingly.

**V.    The Court Should Confirm the Final Award in Its Entirety**

There can be no dispute that the New York Convention governs the Court's review of the Final Awards. Courts asked to confirm foreign arbitration awards pursuant to the Convention "shall confirm the award" unless the party opposing confirmation can establish one of seven specific defenses. 9 U.S.C. § 207.

As described above, no exception applies here which could allow the Court to refuse to enforce the Arbitral Award. Therefore, the Court should confirm the Arbitral Award in its entirety.

## CONCLUSION

The grounds for a court to refuse to confirm an international arbitration award under the New York Convention are extremely narrow and the burden of proof is extremely high. None of the grounds to refuse confirmation exist here, and the Court should confirm the Final Awards expeditiously.

1.   Prime therefore requests that this Court enter a judgment:

    a.   Recognizing, confirming and enforcing the Final Awards rendered against Ayhan Sezer Yag Ve Dida End Tic Ltd Sti. pursuant to the New York Convention and 9 U.S.C. § 201 *et seq.*;

    b.   Directing that judgment be entered thereon in the amount as set forth in the Final Awards, plus interest, cost and expenses;

c. Retaining jurisdiction to enforce satisfaction of the judgment as may be necessary; and

d. For all such other and further relief as is just and proper.

Dated: February 4, 2025

**BLANK ROME LLP**

*/s/ William R. Bennett III*

William R. Bennett III
Noe S. Hamra
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
(917) 332-3068
William.Bennett@blankrome.com
Noe.Hamra@blankrome.com

*Attorneys for Petitioner Prime Trading SA*

004869.00001/152405872v.1